# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| **CAPTAIN JACK'S CRAB SHACK, INC. d/b/a CAPTAIN JACK'S CRAB SHACK, RONNIE BARTLETT, and LEE BARTLETT,**   ) ) ) ) ) | |
| **Plaintiffs,**   ) ) | |
| **v.**   ) ) | |
| **K. DAVID COOKE, JR., District Attorney of the Macon Judicial Circuit, in his individual capacity,**   ) ) ) ) | |
| **MICHAEL G. LAMBROS, Special Assistant District Attorney of the Macon Judicial Circuit, in his individual capacity,**   ) ) ) ) ) | **CIVIL ACTION NO.** _____ |
| **MELANIE BICKFORD, Investigator, City of Byron Police Department, Byron, Georgia, in her individual capacity, and**   ) ) ) ) ) | |
| **CHRISTINE WELCH, Police Officer, City of Centerville Police Department, Centerville, Georgia, in her individual capacity,**   ) ) ) ) ) | |
| **Defendants.**   ) | |

## COMPLAINT AND JURY DEMAND

Plaintiffs Captain Jack's Crab Shack, Inc. d/b/a Captain Jack's Crab Shack ("Captain Jacks"), Ronnie Bartlett and Lee Bartlett, by and through their attorneys, Balch & Bingham, LLP, bring this lawsuit pursuant to 42 USC §§ 1983, 1985 and 1988 to enforce their rights pursuant to the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and their rights secured by Georgia law against Defendants in their individual capacities for having violated the Plaintiffs' constitutional rights by the use of fabricated evidence to arrest Plaintiffs Ronnie Bartlett and Lee Bartlett ("the Bartletts"), to seize and shut down Captain Jack's and Plaintiffs' other businesses in May of 2015, and to seize the Bartletts' other assets through criminal and civil process.

## THE PARTIES

1.      Defendant K. David Cooke, Jr. ("Cooke") is, and has been at all times relevant to this lawsuit, the District Attorney for the Macon Judicial Circuit, responsible for the prosecution of crimes committed in Bibb, Crawford, and Peach Counties of the state of Georgia. Defendant Cooke is subject to the jurisdiction of this Court and may be served with process at 3rd Floor, Grand Building, 661 Mulberry Street, Macon, Georgia 31201. At all times when he is acting in his

capacity as District Attorney of the Macon Judicial Circuit, he is acting under color of state law. Defendant Cooke is sued in his individual capacity.

2.     Defendant Michael G. Lambros is a Special Assistant District Attorney of the Macon Judicial Circuit, under the supervision and control of Defendant Cooke at all times relevant to this lawsuit and acting at all such times under color of state law. When not working under the supervision and control of Defendant Cooke, Defendant Lambros was and is a private attorney with offices at the Lambros Firm, LLC, 1355 Peachtree Street, NE, Suite 1280, Atlanta, Georgia, 30309. Defendant Lambros is subject to the jurisdiction of this Court and may be served with process at his private law office in Atlanta, Georgia, listed immediately above. Defendant Lambros is sued in his individual capacity. As a Special Assistant District Attorney, Defendant Lambros has no State law immunity from lawsuits. O.C.G.A. § 50-21-22 (7).

3.     Defendant Melanie Bickford is an investigator for the City of Byron Police Department, Byron, Georgia. Defendant Bickford verified the Complaint[1] filed by the Defendants against the Plaintiffs. She is subject to the jurisdiction of

---

[1] Complaint for Relief and Notice for Seizure under the Georgia Racketeer Influenced and Corrupt ("RICO") Act.

this Court and may be served at her place of employment located at 401 Main Street, Byron, Georgia 31008. She is sued in her individual capacity.

4.     Defendant Christine Welch is a police officer with the City of Centerville Police Department, Centerville, Georgia. She is subject to the jurisdiction of this Court and may be served at her place of employment located at 500 N. Houston Lake Blvd., Centerville, Georgia 30128. She is sued in her individual capacity.

5.     Plaintiff Ronnie Bartlett is a 72 year old businessman. He lives at 870 Glen Hill Court, Macon, Georgia 31210. At the time of the May 5, 2015, raid which is a subject of this lawsuit, Mr. Bartlett and his wife, Plaintiff Lee Bartlett, owned and operated four businesses in the middle Georgia area: (i) Captain Jack's Crab Shack, 107 Chapman Street, Byron, Georgia 31008; described in greater detail later in this Complaint; (ii) Friends Bar & Grill, 7504 Industrial Highway, Macon, Georgia 31216; (iii) Chevy's of Warner Robins, 228 Russell Highway, Warner Robins, Georgia 31088; and (iv) Peach Auction Sales, 660 Peavy Road, Byron, Georgia 31008. All four of these businesses have been destroyed by the actions of the Defendants. Since May 5, 2015, he has been forced by the Defendants to wear an ankle bracelet. He has never been a law enforcement threat of any kind.

4

6. Plaintiff Lee Bartlett is a 75 year old businesswoman. She lives at 870 Glen Hill Court, Macon, Georgia 31210. With her husband, Plaintiff Ronnie Bartlett, she owned and operated the four businesses which were mentioned in the immediately preceding paragraph of this Complaint. Like her husband, Plaintiff Ronnie Bartlett, she has been financially destroyed by the unlawful conduct of the Defendants set forth in this Complaint.

7. Plaintiff Captain Jack's Crab Shack, Inc. ("Captain Jack's") is a for-profit Georgia corporation which owns a restaurant located at 107 Chapman Street, Byron, Georgia 31008. Captain Jack's operated the restaurant and held a valid license issued by the Georgia Lottery Corporation ("GLC") allowing the restaurant to offer for play bona fide coin operated amusement machines ("Machines").

## SUBJECT MATTER JURISDICTION

8. The Court has jurisdiction over this mater pursuant to 28 USC § 1331.

## VENUE

9. Venue is proper because Defendant Michael G. Lambros is a resident of the Northern District of Georgia. See 28 USC § 1391(b)(1).

## JURY DEMAND

10. The Plaintiffs pursuant to the Seventh Amendment of the United States Constitution request a jury trial on all issues and claims in this Complaint.

## INTRODUCTION

11.     This case is about Defendants falsely and deliberately representing evidence and legal claims in order to secure warrants and injunctions that resulted in the arrest of the Bartletts and the seizure of their assets and the assets of Captain Jack's.  The arrest and seizures destroyed the lives of an elderly couple, forced them into bankruptcy, and closed Captain Jack's—thus destroying that business and putting a number of people out of work.  Despite knowing the probable consequences of their actions, Defendants, on May 5, 2015, nonetheless staged an illegal raid secured by a warrant based on fabricated evidence to search and seize the Plaintiffs' assets and totally shutdown Captain Jack's.  On May 5, 2015, Defendants also secured an ex parte temporary restraining order permitting them to civilly seize Plaintiffs' property.  This temporary restraining order was based on the same false evidence.  To this day, Plaintiff Ronnie Bartlett is wearing an ankle bracelet which restricts his movements and has further caused him injury.  All of this was at the insistence of the Defendants Lambros and Cooke. There is no reason whatsoever for requiring Mr. Bartlett to wear this ankle bracelet.

12.     The Plaintiffs' principal business was a restaurant, Captain Jack's, located at 107 Chapman Street, Byron, Georgia 31008. The Plaintiffs operated the restaurant and held a valid license issued by the GLC allowing the restaurant to

offer for play bona fide coin operated amusement machines (the Machines). The Plaintiffs' Machines are owned by GNB Amusements, Inc. ("GNB"), which leased the Machines to Captain Jack's pursuant to a Location Agreement executed in 2014.

13.    Plaintiffs distributed profits from the Machines to GNB in accordance with the Location Agreement and to the GLC as required by state law, and the remainder was deposited in Captain Jack's bank account, which is currently being controlled by a receiver appointed by the Superior Court of Peach County.

14.    On May 5, 2015, Defendants Cooke and Lambros filed in the Superior Court of Peach County a 19-page verified Complaint for Relief and Notice for Seizure Under the Georgia RICO Act (hereinafter "Defendants' Complaint") Civil Action No. 15-V-0115.

15.    Filed contemporaneously with Defendants' Complaint was Plaintiff's Motion for Appointment of a Temporary Receiver and for a Temporary Restraining Order. In addition to seeking a temporary receiver and an ex parte temporary restraining order ("TRO"), this Motion contained Defendant Lambros' certification that the civil claims of the Defendants' Complaint "are predicated upon prior and continuing criminal activity, to wit, violations of the gambling laws

of Georgia through the illegal use of electronic gaming machines, money laundering and other predicate acts as fully described in the complaint."

16.    The purported facts set forth above in Defendant Lambros' May 5, 2015 certification to the Peach County Superior Court are false. At the Plaintiffs' business, there were no illegal electronic gaming machines, no money laundering, and no other RICO predicate acts at the time of the May, 5, 2015 raid by the Defendants or at any other time.

17.    On May 5, 2015, Defendants Cooke and Lambros also directed an illegal raid, based on a warrant secured with false evidence, on Captain Jack's, and confiscated the Machines, as well as cash, and other personal property belonging to the Plaintiffs, based on the knowingly false charge that the Plaintiffs were engaged in illegal gambling activities at Captain Jack's.

18.    That same day, the Superior Court of Peach County appointed an ex parte temporary receiver of Plaintiffs' Machines and other property of Plaintiffs and entered a TRO directing Plaintiffs to preserve evidence relating to the Defendants' claims and freezing Plaintiffs' accounts and assets that are the subject of the State's forfeiture action. As a result of the Defendants' wholly unjustified actions, Captain Jack's has been unable to reopen since the Defendants' raid and seizure of their property, thereby causing Plaintiffs great financial hardship, fear,

and emotional distress. Further, Plaintiffs were arrested on false allegations. The arrest deprived them of their liberty, restricted them from travel, and caused them financial ruin.

19.    Defendants, both as to the warrants and the seizure of property, knowingly and falsely represented that Plaintiffs had violated the Georgia RICO Act.  Defendants falsely attested that Plaintiffs had committed crimes (predicate acts) supporting the Georgia RICO warrant and claims—to wit, Defendants contended that Plaintiffs: (a) were operating illegal gambling machines; (b) were making cash payments to players of the "illegal gambling machines"; (c) falsely reported winnings to the Georgia Department of Revenue; and (d) were engaged in money laundering.  Defendants knew at this time that either they had no evidence of any of the predicate acts and/or that the "predicate acts" (in particular alleged cash payments associated with the operation of a bona fide coin operated amusement device) were not predicate acts under Georgia RICO.   Indeed, Defendant Christine Welch and Defendant Melanie Bickford admitted during an August 4, 2015 hearing, that Defendants had no evidence of false reporting to the Georgia Department of Revenue or money laundering whatsoever.  Defendants at all times knew that alleged cash payments (addressed below) were simply a

misdemeanor under Georgia law that could not support a Georgia RICO indictment or claim.

20.     Defendants further claimed that the Machines were illegal gambling devices despite expressly knowing they were not.  Defendants had absolutely no evidence at the time they secured the warrants and seizure of Plaintiffs' property that the Machines were anything other than bona fide coin operated amusement machines.  Defendants Lambros and Cooke had extensive knowledge of the coin operated amusement industry and they had extensive exposure to the types of Machines that were at issue and they knew they were bona fide coin operated amusement machines.

21.     Defendants nevertheless contended, through the testimony of Defendant Christine Welch at an August 4, 2015 injunction hearing and in Defendants' affidavits supporting the warrants and injunctions, that the Machines at Captain Jack's allowed a "win" of the games without any skill or assistance of the player.   Again, Defendants knew this information was false and when presented with clear unequivocal evidence of its falsity Defendants nevertheless refused to withdraw their assertions.

22.     Indeed, when asked to withdraw the allegations that the Machines were illegal gambling machines that were made by Defendant Welch, Defendant

Lambros in a March 22, 2016, e-mail acknowledged to Plaintiffs' counsel Christopher S. Anulewicz that "if these games were true Nudge games [which they are] she [Defendant Welch] may have been mistaken." Yet Defendant Lambros would not withdraw Defendant Welch's statements that kept Plaintiff Bartlett in an ankle bracelet and kept Plaintiffs' assets from being returned to them.

23. Defendants have contended that that there is a videotaped recording taken by Defendant Welch that shows the Machines actually allowed a "win" without the assistance of the player. Indeed, Defendant Welch unequivocally testified to this fact at an August 4, 2015 hearing upon questioning by Defendant Lambros and others. But despite this testimony, Defendants refused to produce the alleged video in discovery in the Civil Action, in the criminal matter, or pursuant to an Open Records Request—despite promising they would do so. To the extent that such a videotape exists, it cannot support the assertions of Defendants, as they know.

24. Defendants have further refused to produce to Plaintiffs the affidavits that Defendants submitted in support of the criminal warrants they obtained.

25. Defendants further contended that the alleged videotape shows Defendants making cash payments for the "wins" of "illegal gambling machines." Again, Defendants knew there were no illegal gambling machines and they knew

11

that any alleged cash payments would have been merely misdemeanors that could not support a Georgia RICO claim.  And Defendants have further not produced the alleged videotape evidencing their contention.

26.    Despite approximately 11 months of almost constant demands for discovery in the Civil Action, Plaintiffs have received not one scintilla of information from the Defendants concerning the basis of the civil case against the Plaintiffs.  This is because no such evidence exists or has ever existed.

27.    Defendants have engaged in these actions against Plaintiffs (and others) in order to secure money from the seizures—despite the illegality of the seizures.  Defendants have a pattern and practice of engaging in similar conduct in order to seize the assets of locations operating bona fide coin operated amusement machines.  Defendants seize all of the assets of locations operating bona fide coin operated amusement machines.  Defendants then typically extort a resolution with the location owners that allow Defendants to keep a portion of the money improperly seized—all while threatening location owners with criminal prosecution.  Defendant Lambros is paid through the improperly seized funds—in violation of Georgia law.  Defendant Cooke creates an unaccountable fund with the revenues generated from these improper seizures, minus the monies paid to Defendant Lambros, and then expends them, in violation of the Georgia

Constitution, on items that he believes will garner him favor with his constituency. When location owners whose assets have been seized contest the seizures, Defendants typically "drop" the cases or charges created and attempt to walk away—as they have done with regard to the Bartletts and Captain Jack's.

### The Machines at Issue Were Legal—As Defendants Know

28.   At the time of the May 5, 2015, raid by the Defendants on Captain Jack's, nine Machines were confiscated by the Defendants and disconnected from the GLC Intralot Central System by the Defendants.

29.   The Machines had been determined in 2010 by the Georgia Supreme Court to be Georgia law compliant for bona fide coin operated amusement machines in Ultra Telecom v. State of Ga., 288 Ga. 65 (2010).

30.   Early in 2016, the Plaintiffs were forced by Defendants' illegal conduct to retain two experts in the development, delivery, test, and evaluation of gaming and electronic devices and games. The experts' task was to determine if the Machines as they now exist in the Court Receiver's storage facility (City of Byron Police Storage Facility, Byron, Peach County, Georgia) ("storage facility") had been tampered with since the GLC lockout on May 5, 2015 and to determine if the machines were compliant with O.C.G.A. § 16-12-35 for bona fide coin operated amusement machines.

31.    The Nizdil and Farley Affidavits establish that the testimony of Defendant Officer Christine Welch of the Centerville Police Department upon which the seizure of the Plaintiffs' Machines and destruction of their business is based is without any legitimate factual basis.

32.    On March 3, 2016, Mr. Nizdil and Mr. Farley inspected the Machines at the storage facility. Of the total of nine Machines, there were seven devices manufactured by Primero Games, LLC, and two by Banilla Games. Defendant Lambros was invited to attend the inspection but did not attend.

33.    On April 19, 2016, Mr. Nizdil and Mr. Farley conducted a second inspection at the Primero Facility in Duluth, Georgia, of the seven Primero devices identical to those they inspected at the Byron storage facility on March 3, 2016. Using the data gathered in March, they performed internal research into each device's game components and machine history. They retrieved and matched an archived version of each game corresponding to the A-number for each device. Each Primero device has a unique identifier, known as its A-number. Nizdil and Farley had taken photographs of each device and its A-number. Primero reproduced machines using the archived data in order to duplicate the seized device's hardware configuration and software with exactness. Nizdil and Farley then performed extensive inspections and testing on each of the seven machines to

ensure that it was a perfect representation of the counterpart machine they inspected at the Byron storage facility on March 3, 2016.

34.    Both Mr. Nizdil and Mr. Farley concluded that none of the nine Machines had their software tampered with or altered in any way whatsoever since the GLC lockout on May 5, 2015.

35.    Both Mr. Nizdil and Mr. Farley concluded that the seven Primero games they inspected on April 19, 2016, were identical in hardware configuration and software to the games of the corresponding name that they inspected at the Byron storage facility on March 3, 2016.

36.    On May 2, 2016, Mr. Farley examined the software of the two Banilla Games devices for the games labeled: Nudge Factory and Diamond Skill 1. The management at Banilla Games sent Mr. Farley at his Solon, Ohio, Testing Facility, the software for the two devices. Mr. Farley personally examined both of these Banilla Games devices to ensure that each device complies with O.C.G.A. § 16-12-35.

37.    Both Mr. Nizdil and Mr. Farley used a series of 12 questions to ensure that each device complies with O.C.G.A. § 16-12-35. Both Nizdil and Farley in their affidavits answer the questions for Primero devices, and Farley does so for Banilla Games devices in his affidavit.

15

38.    Based on the questions and answers set out in his affidavit, Mr. Nizdil concludes that the seven Primero games seized from Captain Jack's on or about May 5, 2015, housed at the Byron storage facility, have at all times complied with the requirements of O.C.G.A. § 16-12-35 for bona fide coin operated amusement machines.

39.    Based on the questions and answers set out in his affidavit, Mr. Farley concludes that all nine Machines seized from Captain Jack's on or about May 5, 2015, housed at the Byron storage facility, have at all times complied with the requirements of O.C.G.A. § 16-12-35 for bona fide coin operated amusement machines.

40.    As set forth above, and despite the obvious legality of the Machines, Defendant Welch and Defendant Bickford testified at an August 4, 2015, preliminary injunction hearing. Welch testified that there were illegal cash payouts on Captain Jack's' Machines because they allowed "wins" of the games on the Machines without any skill or assistance of the player. They both further testified that there was videotape evidence supporting this allegation. The videotape was not introduced into evidence at the preliminary injunction hearing.

41.    As set forth above, to date no videotape has been produced despite: (1) a Motion for Sanctions, or Alternatively to Compel Discovery, filed May 11,

2016, by Captain Jack's Crab Shack, which specifically requests Defendant Cooke to identify "all video and/or audio recordings taken at Captain Jack's Crab Shack in your possession, custody, or control, including but not limited to the video and/or audio recordings taken by Ms. Christine Welch as testified by Ms. Welch at the August 4, 2015 hearing in this case"; and  (2) a Complaint filed in the Superior Court of Peach County, Georgia, Civil Action 16-V-0170, June 17, 2016, against the City of Byron, Georgia and K. David Cooke, Jr., District Attorney for the Macon Judicial Circuit, seeking to enforce the Georgia Open Records Act, O.C.G.A. § 50-18-70, et seq. against the City of Byron and District Attorney Cooke for failure to produce video recordings allegedly made by Defendant Welch of allegedly illegal activity at Captain Jack's which led to the May 5, 2015, raid by the Defendants in this case.

42.    It is evident from the internal exhibits to the Complaint in Peach County Superior Court Civil Action No. 16-V-0170 referenced in the preceding paragraph that the Defendants contend in this case Defendant Welch made one or more video recordings of alleged illegal activity.

43.    On March 31, 2016, the Defendants Cooke and Lambros promised Plaintiffs' counsel Michael J. Bowers in a meeting in Cooke's Macon office to

produce a copy of a video showing an illegal $2500 payoff by Mr. Bartlett. That promise was confirmed the next day by e-mail.

44.     On April 12, 2016, the Defendants Cooke and Lambros informed the attorneys for the Plaintiffs that because there is so little money remaining in the Plaintiffs' coffers the Defendants plan to dismiss the civil case in Peach County Superior Court with no need for any discovery at all by the Plaintiffs.

45.     On May 2, 2016, Plaintiffs' counsel Christopher S. Anulewicz sent an O.C.G.A. § 50-21-26 Ante Litem Notice to Michael Lambros, State of Georgia, Ex rel. K. David Cooke, Jr. and Risk Management Services Division, Georgia Department of Administrative Services. The Notice generated a telephone call on or about May 3, 2016, from Defendant Cooke to Mr. Anulewicz.

46.     In the May 3, 2016 telephone call, Defendant Cooke stated to Mr. Anulewicz, that prior to receiving the Notice he was not planning to prosecute Ronnie and Lee Bartlett, but receiving the Notice had caused him to reconsider and prioritize their case for prosecution.  This was a clear threat to prosecute a claim that is not prosecutable simply to gain advantage over Plaintiffs.

47.     At the August 4, 2015, preliminary injunction hearing neither Defendant Welch nor Defendant Bickford could identify any evidence, despite the

complaint verified by Defendant Bickford, that there was any false reporting of revenue or money laundering.

48.     The only possible predicate acts for RICO claims, according to the verified complaint of the Defendants, is that the Machines are illegal gambling machines.   But the Machines are perfectly legal as set forth above. And, at all times relevant to this action, Defendants were aware of this.

49.     There is a fundamental problem with the use of cash payouts in the Defendants' RICO case, and Defendants Cooke and Lambros should have been well aware of these problems.

50.     As a matter of law, a cash payout for a bona fide coin operated amusement machine, while a misdemeanor of a high and aggravated nature, is not a felony under Georgia law, O.C.G.A. § 16-14-3 (5) (A) (xxxii), and cannot serve as a predicate act for a RICO proceeding.   Defendants have used the knowingly false charge that the Machines are illegal gambling machines (and they are not) to justify seizing Plaintiffs' assets and restricting Plaintiffs' rights.

## COUNT I

**FIFTH AND FOURTEENTH AMENDMENT CLAIMS—PURSUANT TO**

**42 U.S.C. § 1983**

51.    Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and further allege as follows:

52.    Defendants Cooke, Lambros, Bickford, and Welch, acting individually and in concert, and in conspiracy with one another while in their investigative capacities, deliberately fabricated inculpatory evidence against Plaintiffs Ronnie and Lee Bartlett: that Plaintiffs Ronnie and Lee Bartlett violated the Georgia RICO Act by engaging in a pattern of racketeering activity under said Act by multiple violations of Section 22 of Chapter 12 and Section 20 of Chapter 10 of Title 16 of the Official Code of Georgia relating to commercial gambling and perjury and other falsifications, respectively, and money laundering pursuant to 18 USC § 1961.

53.    This evidence fabricated by Defendants was foreseeably used by Defendants Cooke and Lambros against Plaintiffs, causing the Bartletts and Captain Jack's to be the focus of a lengthy State investigation and RICO lawsuit which continues to this day. As a direct, proximate and foreseeable result of the Defendants' fabrication, the Superior Court of Peach County authorized a search of

the Bartletts' offices, files, restaurant, records, and electronic devices, which the Defendants accomplished on or about May 5, 2015. The false evidence upon which the Defendants' raid of Captain Jack's and the seizure of Plaintiffs' goods focused was the testimony of Defendant Christine Welch—which Defendant Lambros later acknowledged was not correct.

54.    Defendant Melanie Bickford, under whom Defendant Welch worked during the May 5, 2015 raid, verified the Defendants' Complaint For Relief and Notice of Seizure Under the Georgia Racketeer Influenced and Corrupt Organizations Act. Without the fabricated evidence of Defendant Welch's testimony as to illegal cash payouts, there was no basis to make the Bartletts, or Captain Jack's, a target of a Georgia RICO prosecution or a Georgia RICO civil lawsuit.

55.    Defendants' misconduct deprived the Bartletts and Captain Jack's of their clearly established constitutional rights under the Fifth and Fourteenth Amendments of the United States Constitution, not to be deprived of liberty or property as a result of fabrication of evidence by government officials acting under color of state law. Defendants performed the above-described acts under color of state law, in their capacities as District Attorney of the Macon Judicial Circuit, Special Assistant District Attorney of the Macon Judicial Circuit, investigator for

the City of Byron Police Department, and police officer for the City of Centerville. No reasonable person in 2015 or 2016, in any of the above capacities would have believed that fabrication of false evidence was lawful.

56.   At the time of the fabrication, all Defendants understood the highly detrimental impact that the shutdown of Captain Jack's would likely have on an elderly couple like the Bartletts.   Plaintiffs have suffered great harm as a consequence of Defendants' actions.

## COUNT II

## FOURTH AND FOURTEENTH AMENDMENT CLAIMS—PURSUANT TO 42 U.S.C. § 1983

57.   Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and further allege as follows:

58.   Defendants Cooke, Lambros, Bickford, and Welch, acting individually and in concert and in conspiracy with one another while in their investigative capacities caused a search of the Plaintiffs' business, files, records, electronic devices, and bona fide coin operated amusement machines without probable cause, thereby violating Plaintiffs' clearly established rights under the Fourth and Fourteenth Amendments of the United States Constitution to be free

from unreasonable searches by government officials acting under color of state law.

59.    Although Defendants' search of Plaintiffs' effects was conducted pursuant to a warrant, that authorization was issued based on fabrications, material misrepresentations, and material omissions. Defendants, as discussed in detail above, knowingly or deliberately, or with reckless disregard of the truth, made fabrications, false statements, and material omissions in the warrant affidavit.

60.    These misrepresentations were necessary to the state court's finding of probable cause. Defendants had no other evidence that Plaintiffs were operating in an illegal manner at Captain Jack's and presented no other evidence to the court. Without these fabrications, material misrepresentations, and material omissions, there was no probable cause for the search, and the warrant would not have been issued.

61.    Defendants knowingly or deliberately, or with reckless disregard of the truth, made the fabrications, false statements, and material omissions in the warrant affidavit because they knew that otherwise, Defendants had no basis to take adverse action against Plaintiffs.

62.    In addition to violating Plaintiffs' Fourth and Fourteenth Amendment rights by engaging in a search absent probable cause, Defendants also violated

Plaintiffs' Fourth and Fourteenth Amendment rights to be free from an unreasonable search based on the public manner of the search on Plaintiffs' business.

63.     By securing judicial approval based on false statements, misrepresentations, and omissions, conducting a search without probable cause, departing from typical procedures by conducting a raid absent cause, and publicizing the search to members of the media without any legitimate law enforcement purpose, Defendants directly and proximately caused Plaintiffs' injuries, including the loss of their business and assets.

## COUNT III

## CLAIM FOR FAILURE TO INTERCEDE

64.     Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and further allege as follows:

65.     Defendants Cooke and Lambros each had a realistic opportunity to intervene on Plaintiffs' behalf to prevent the violation of Plaintiffs' constitutional rights not to be deprived of property or reputation without due process of law and to be free from unreasonable searches, but, due to their intentional conduct and/or reckless or deliberate indifference, declined or refused to do so.

66.     Defendants Cooke and Lambros understood that there was insufficient evidence to name the Plaintiffs as targets of the warrant or to search their business, files, and personal electronic devices and bona fide coin operated amusement machines. As part of the team responsible for investigating the Plaintiffs, responsible for the drafting of the affidavit, and responsible for the search, these Defendants also knew that the affidavit contained false statements against Plaintiffs. These Defendants did nothing to prevent the submission of false statements in support of the warrant and did nothing to prevent the ensuing unconstitutional search and injuries to the Plaintiffs. At all relevant times Defendants were acting under color of state law.

67.     As a direct and proximate result of Defendant Cooke's and Lambros' failure to intervene and prevent violation of Plaintiffs' constitutional rights, Plaintiffs suffered the substantial and continuing injuries and damages as set forth above.

## COUNT IV

## VIOLATION OF 42 USC 1985

68.     Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and further allege as follows:

69.     Defendants acted in a conspiracy to violate Plaintiffs' Constitutional rights as set forth in above.

70.     As a direct and proximate result of Defendants' conspiracy Plaintiffs have suffered substantial and continuing injuries and damages as set forth above.

## COUNT V

### VIOLATION OF 42 USC 1988

71.     Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and further allege as follows:

72.     Plaintiffs are entitled to attorneys' fees and expenses incurred as a result of Defendants' violations of their constitutional rights (as set forth above) pursuant to 42 USC 1988.

## COUNT VI

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

73.     Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and further allege as follows:

74.     As set forth above, the Defendants' conduct towards Plaintiffs was malicious and without probable cause or legitimate purpose.  The Defendants conspired to orchestrate the illegal arrest of Plaintiffs and seizure of their property in deprivation of their civil rights based on knowingly false charges.

75.     As set forth above, Defendants' conduct was extreme and outrageous.

76.     Defendants' conduct was specifically intended to and did in fact cause Plaintiffs suffering, terror, financial ruin, and great emotional distress.

77.     Accordingly, Defendants are entitled to recover damages in an amount to be determined at trial.

## COUNT VII

### CONVERSION

78.     Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and further allege as follows:

79.     Defendants acted with intent to permanently deprive Plaintiffs of their property by: (a) confiscating Plaintiffs' property and money knowing the confiscation was being accomplished under false pretenses; and (b) refusing to return Plaintiffs' property and money.

80.     Plaintiffs, through counsel, repeatedly demanded that Defendants return Plaintiffs' funds and property.  Defendants have refused to do so.

81.     Defendants have wrongfully exercised dominion and control over Plaintiffs' money and property even after being specifically told that the Machines are legal – and that the testimony that Lambros elicited from Officer Welch leading to the confiscation was untruthful.

27

82.     All conditions precedent to the assertion of this claim have been performed by Plaintiffs, or waived and excused by Defendants.

83.     As a direct and proximate cause of the unlawful conduct of Defendants, Plaintiffs have suffered and will continue to suffer damages in an amount to be proven at the trial of this case.

84.     Defendants, by engaging in the conduct described herein, acted in bad faith and put Plaintiffs to unnecessary trouble and expense, thereby entitling Plaintiffs to recover all costs of litigation, including attorneys' fees.

## COUNT VIII

## PUNITIVE DAMAGES

85.     Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and further allege as follows:

86.     Defendants' actions were intentional and malicious.   They were taken with the specific intent to cause Plaintiffs harm.

87.     Defendants should be punished to deter them from engaging in similar misconduct in the future.

88.     Accordingly, Plaintiffs are entitled to an award of punitive damages in an amount to be determined by the enlightened conscience of a jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray that this Court issue the following relief:

a.    That Plaintiffs be awarded all compensatory, general, and special damages permitted by law;

b.    That Plaintiffs be awarded their expenses of litigation, including reasonable attorneys' fees;

c.    That punitive damages be awarded against Defendants in an amount to be determined by the enlightened conscience of a jury; and

d.    Any additional relief this Court deems just and proper.

[signatures on next page]

Respectfully submitted this 9th day of August, 2016.

/s/ Michael J. Bowers
Michael J. Bowers
Georgia Bar Number 071650
mbowers@balch.com
Christopher S. Anulewicz
Georgia Bar Number 020914
canulewicz@balch.com
Matthew B. Ames
Georgia Bar Number 015898
mames@balch.com

**BALCH & BINGHAM LLP**
30 Ivan Allen Jr. Blvd. N.W., Suite 700
Atlanta, GA 30308
Telephone: (404) 261-6020
Facsimile: (404) 261-3656

ATTORNEYS FOR PLAINTIFFS