# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| CAPTAIN JACK'S CRAB SHACK, INC. d/b/a CAPTAIN JACK'S CRAB SHACK, RONNIE BARTLETT, and LEE BARTLETT, <br><br> Plaintiffs, <br><br> v. <br><br> K. DAVID COOKE, JR.; MICHAEL G. LAMBROS; MELANIE BICKFORD; and CHRISTINE WELCH, <br><br> Defendants. | CIVIL ACTION NO. 1:16-CV-02887-SCJ |

**PLAINTIFFS' BRIEF IN SUPPORT OF MOTION TO REOPEN AND FOR RECONSIDERATION**

Plaintiffs Ronnie Bartlett and Lee Bartlett (the "Bartletts") timely move, pursuant to Local Rule Rule 7.2(E) and per this Court's April 17, 2017 (the "Order"),[1] for Reconsideration of the Order as follows:

---

[1] Although the Court administratively closed this case pending resolution of the state court criminal proceedings against the Bartletts, the Court specifically stated, "[t]his matter may be reopened at any time, upon motion of any of the parties." Order at 13. Plaintiffs hereby move the Court to reopen this matter to consider its Motion for Reconsideration.

### A. It is Undisputed Defendants Had No Reasonable Expectation of Obtaining a Conviction Against The Bartletts

#### 1. Defendants Had No Evidence Whatsoever Of A Crime

The Bartletts asked this Court to enjoin the state criminal prosecution against them pursuant to the three-part test established in Wilson v. Thompson, 593 F.2d 1375 (5th Cir. 1979). See Order at 6-7 [Doc. 82]; Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction [Docs. 49-1].[2] The Bartletts presented *unrebutted* evidence that Defendants had no proof to support their Georgia RICO indictment against the Bartletts. [Docs. 49-1, 55, and 63]. In particular, Plaintiffs showed Defendants had no evidence the Bartletts: (1) were operating illegal gambling machines; (2) had "paid cash" to anyone (and even if they had, payment of cash could not support a Georgia RICO indictment); (3) had made false reports to the government; or (4) engaged in money-laundering. These were the predicates to the Bartletts' indictment—yet there is no record proof to support them. Id. As set forth below, in prior briefing, and at oral argument, the Bartletts introduced unrebutted affirmative evidence they had not committed these acts. Defendants did not even attempt to prove otherwise. The Court's Order does not address these issues.

---

[2] The Court acknowledged the Bartletts satisfied the first prong of the Wilson test – "the conduct allegedly retaliated against or sought to be deterred was constitutionally protected." Order at 8.

The Court's Order addresses only Defendants' contention they had "always intended" to prosecute the Bartletts. However, without any evidence of a predicate act or crime, there can be no showing under Wilson that Defendants could have "a reasonable expectation of obtaining a valid conviction." And prosecution based on no evidence is "bad faith" that should be enjoined.

The Bartletts showed the Court they sought the evidence upon which Defendants were allegedly relying for over seventeen months. These efforts were to no avail because Defendants refused to provide any evidence—because it does not exist. The lack of any supporting evidence and the timing of the indictments showed Plaintiffs were prosecuted in retaliation for filing this suit. These facts highlighted and confirmed the Bartletts' primary argument—that Defendants had no evidence of any wrongdoing and thus the indictment must have been made in retaliation for the Bartetts having filed this action. The Court should reconsider its Order based on the foregoing.

### 2. Wilson Requires Evidence Of A Reasonable Expectation Of Obtaining A Valid Conviction

In the context of Wilson "'bad faith' means that a prosecution has been brought without a reasonable expectation of obtaining a valid conviction." Kugler v. Helfant, 421 U.S. 117, 126 (1975); see also Watson v. Florida Judicial Qualifications Comm'n, 618 Fed. Appx. 487, 490 (11th Cir. 2015) ("A proceeding

is initiated in bad faith if it is brought without a reasonable expectation of obtaining a valid conviction."); McCormick v. Farrar, No. 01-4136-SAC, 2001 WL 1456796, at *5 (D. Kan. Oct. 11, 2001) (bad faith requires showing "prosecutions lack any reasonable prospect of being successful"). This is an *objective inquiry*. See Phelps v. Hamilton, 59 F.3d 1058, 1063-64 (10th Cir. 1995) (bad faith is shown where prosecution was "undertaken with no reasonably objective hope of success"); Odom v. McMaster, No. 2:10-CV-00873-MBS, 2010 WL 3169375, at *4 (D.S.C. Aug. 6, 2010) (same). Here, the charges in the indictment lack any reasonable prospect of being successful, and therefore no reasonable prosecutor would have filed the charges against the Bartletts in the absence of a bad faith motive to retaliate against them.

### 3. The Bartletts Satisfied Their Burden of Showing the Indictment Was Motivated at Least in Part by Defendants' Purpose to Retaliate.

The second prong of the Wilson test requires the Bartletts show Defendants' criminal prosecution "was motivated *at least in part* by a purpose to retaliate" for their exercise of their constitutionally protected right. Wilson, 593 F.2d at 1387 (emphasis supplied). Defendants indicted the Bartletts based on allegations the Bartletts engaged in commercial gambling through illegal gambling machines, made cash payouts to players of the machines, and made false writings and

statements. The Court did not address in its Order the most probative evidence showing Defendants knew when they indicted there was no reasonable chance for success on the criminal charges in the indictment because there was no factual or legal basis for them – not in May 2015, not in October 2016, and not to this day – and that the only reasonable conclusion is Defendants' decision to prosecute the Bartletts was motivated to retaliate (at least in part).

First, the Bartletts presented evidence refuting the indictment's charges based on their alleged operation of illegal gambling machines. Lambros admitted the detective who testified the machines were illegal gambling machines "may have been mistaken." This shows Lambros knew that the sole evidence forming the basis for Defendants' felony gambling charges against the Bartletts "may have been mistaken."

Further, Plaintiffs presented evidence to Lambros and the other Defendants clearly establishing the machines were in fact legal. Specifically, Plaintiff presented Defendants, and the Court, with evidence establishing (1) the machines were declared legal by the Georgia Supreme Court in Ultra Telecom, Inc. v. State, 288 Ga. 65 (2010); and (2) Plaintiffs' undisputed experts testified in affidavits provided to the Court that the machines are in fact legal bona fide coin operated amusement machines. See, e.g., [Doc. 49-1] at Exs. E, F, G. Despite Plaintiffs'

requests, Defendants have never offered anything to counter this evidence. Accordingly, Lambros's admission that the evidence upon which the indictment was based "may have been mistaken" was not an acknowledgement of a hypothetical possibility. When combined with the undisputed evidence the machines are legal, Lambros's acknowledgement of the "mistaken" basis for the charges in the indictment, shows Defendants had no basis to indict.

Second, the Bartletts presented evidence refuting the indictment's charge they engaged in commercial gambling in violation of OCGA § 16-12-22(a)(1) by making cash payouts to persons who played the machines. Indeed, the testimony of Defendants' own witness at an August 4, 2015 hearing shows that Defendants had no evidence of Ronnie Bartlett[3] paying cash to anyone. *See, e.g.,* August 4, 205 Hearing Transcript [Doc. 49-1] at Ex. K p. 79; and [Doc. 55] at Ex. A. p. 78 (admitting no evidence of Ronnie Bartlett paying cash to anyone). This remains unrebutted.

As Plaintiffs explained to Defendants, even if the Bartletts had made any cash payments, which they deny, a person who gives out money as a reward for successful play of a legal coin operated amusement machine can only be guilty of a misdemeanor, which cannot be prosecuted under the Georgia RICO Act (as it is

---

[3] There is a complete void of evidence anywhere in the record Lee Bartlett committed any crime. Yet she stands indicted after having filed this suit.

not a predicate act). See OCGA § 16-12-35(g); § 16-14-2(b); [Doc. 55] at 3-4. Nor does paying cash for the successful play of a legal coin operated amusement machine constitute "commercial gambling" for purposes of OCGA § 16-12-22(a)(1), because the General Assembly specifically defined the offense and penalty for paying cash winnings for successful play of a legal coin operated amusement machine as a misdemeanor in OCGA § 16-12-35(g).[4] Id. Again, Defendants did not present the Court with anything to contradict this conclusion.

Third, Defendants have never presented any evidence the Bartletts made false writings or statements of any nature or engaged in money laundering. *See* [Doc. 49-1] at Ex. K. pp. 35, 47; [Doc. 55], Exhibit A, at pp. 35, 47 (no evidence of false reporting revenues or financial improprieties). Again, Defendants did not even attempt to present evidence to the contrary.

Indeed, the "false writings and statements" count alleges the Bartletts underreported their income "derived from the illegal gambling." Like the other counts in the indictment, this count is dependent on the machines constituting illegal gambling devices or the Bartletts engaging in commercial gambling. As

---

[4] OCGA § 16-12-35(g) states, "Any person owning or possessing [a bona fide coin operated] amusement game or device … or any person employed by or acting on behalf of any such person who gives to any other person money as a reward for the successful play or winning of any such amusement game or device shall be guilty of a misdemeanor of a high and aggravated nature."

discussed above, the Bartletts presented evidence establishing the machines are not illegal and they are not using the machines in an illegal manner, and Defendants presented no evidence to the contrary.

Because there is no evidence of any crime, the unrebutted evidence shows that the "prosecution has been brought without a reasonable expectation of obtaining a valid conviction." This is bad faith and this should end the inquiry. Defendants have been pressed on this issue for well over a year and a half and they still have not offered any proof of a crime. This Court should consider whether a reasonable, objective prosecutor could think he could obtain a conviction based on no evidence. If a reasonable prosecutor could not think so, then Defendants' prosecution of the Bartletts is bad faith.

### 4. The Bartletts Showed Defendants' Acted With Retaliatory Animus

In addition to the unrebutted evidence showing a total lack of any factual or legal basis for the specific charges in the indictment, Plaintiffs also presented evidence showing the indictment was motivated by retaliatory animus. The sequence and timing of Defendants' actions in response to Plaintiffs' ante litem notice, filing this lawsuit, and argument against <u>Younger</u> abstention points to retaliatory animus. Defendants' "explanation" – that six other individuals were indicted the same day as the Bartletts and it is not unusual to take 17 months to

prepare an indictment in such "complex" cases – is supported by nothing other than their own self-serving testimony. Indeed, this Court even raised doubts about Defendants' explanation, finding it "ha[d] trouble seeing how the cases are so 'complex' as to justify a delay of nearly a year and a half in bringing the indictments." Id.

Given the lack of evidence supporting a criminal case against the Bartletts, and the timing of the indictments, no prosecutor could have a reasonable expectation of obtaining a valid conviction against the Bartletts on such charges, and no reasonable prosecutor would have indicted the Bartletts in the absence of a retaliatory motive. See Kugler, 421 U.S. at 126; Watson, 618 Fed. Appx. at 490; see also Wilson, 593 F.2d at 1387 n.22 (prospect of conviction is relevant to determination whether prosecution would have been brought absent retaliatory motive).

As the Bartletts have shown bad faith, the Defendants must then show, by a preponderance of the evidence they would have decided to prosecute the Bartletts even in the absence of their impermissible retaliatory purpose. See Wilson, 593 F.2d at 1387. The only explanation Defendants presented to the Court in an effort to satisfy their burden was their self-serving assertion that it takes a long time to prepare an indictment in such "complex" cases and six other individuals were

indicted at the same time as the Bartletts. But good faith is an objective test. No objectively reasonable prosecutor could expect to obtain a valid conviction on no evidence—even if they swore they always intended to indict. As such, Defendants have failed to meet their burden.

As all elements of the Wilson test have been met, Plaintiffs respectfully request the Court to reconsider its Order and, for the reasons addressed above, in their prior briefs, and at oral argument, grant them the relief sought by their Motion for Temporary Restraining Order and Preliminary Injunction.

### B. The Court Should Rule on Motion to File Amended Complaint.

This civil rights litigation was filed in August 2016. It was not until October 2016 the Defendants indicted Plaintiffs Ronnie Bartlett and Lee Bartlett. Prior to being indicted, the Bartletts did not seek equitable relief and thus there was no need to sue Defendants in their "official capacities." Once indicted, the Bartletts did seek equitable relief in the October 27, 2016 Amended Complaint and Motion for Temporary Restraining Order, and they moved in November 18, 2016, to add claims against Defendants in their official capacities.[5]

---

[5] Plaintiffs' November 18, 2016 Proposed Amended Complaint Plaintiffs sought to file specifically pled Count X's claim for injunctive relief "against Defendants Cooke and Lambros in their official capacities." See November 18, 2016 Proposed Amended Complaint at ¶¶ 1, 2, 68 and Count X.

In their briefing and Proposed Amended Complaint, Plaintiffs expressly addressed Defendants' arguments that injunction relief could only be afforded against Defendants in their official capacities.[6] Respectfully, the Court should have considered Plaintiffs' requested Amendment prior to issuing its April 2017 Order.

In footnote 1 of its Order, the Court stated:

> … the Court notes that Plaintiffs cannot enjoin the State of Georgia from proceeding with its prosecution of them because they have only sued Defendants in their individual capacities, not in their capacities as state officials. See Gamble v. Florida Dep't of Health & Rehab. Servs., 779 F.2d 1509, 1516 (11th Cir. 1986) (noting that "a § 1983 plaintiff may enjoin unconstitutional state action if the responsible state agents are sued in their official capacities"). ***Plaintiffs nowhere address this issue,*** and for this reason alone their motion for a preliminary injunction to halt their criminal prosecutions is DENIED.

(emphasis added). But the Bartletts expressly did address this issue.

While this is an alternative holding in a footnote, to the extent Plaintiffs' initially suing Defendants Cooke and Lambros in their official capacities had any

---

[6] On November 18, 2016, Plaintiffs filed responses to Cooke's and Lambros's motions to dismiss, in which Plaintiffs expressly stated they had filed a Motion for Leave to File Amended Complaint in order to, among other things, specifically assert their claim for injunctive relief against Cooke and Lambros in their official capacities. See Plaintiffs' Response to Defendant K. David Cooke, Jr.'s Motion to Dismiss the Amended Complaint for Failure to State a Claim at 21 n.6; Plaintiffs' Response to Defendant Michael Lambros's Motion to Dismiss (or Stay) at 25 n.12.

bearing on the Court's refusal to grant the injunctive relief the Bartletts requested, Plaintiffs respectfully submit the Court erred.

The Court never ruled on Plaintiffs' Motion for Leave to File Amended Complaint, which Plaintiffs respectfully submit the Court should have done before issuing its Order. If it had ruled on Plaintiffs' Motion and allowed their Amended Complaint, Plaintiffs' claim for injunctive relief would have been properly asserted against Cooke and Lambros in their official capacities, and there would have been no basis for the Court's conclusion in its Order that "for this reason alone" Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction was due to be denied.

Plaintiffs respectfully request, therefore, that the Court reopen this case and (1) grant their Motion for Leave to File Amended Complaint and (2) amend its Order to reflect the fact Plaintiffs properly asserted their claim for injunctive relief against Cooke and Lambros in their official capacities.

**C. Conclusion**

For all these reasons, Plaintiffs' Motion to Reopen and for Reconsideration should be granted. The Court should grant Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction. [Doc. 49].

Respectfully submitted this 15th day of May, 2017.

**/s/ Christopher S. Anulewicz**
Michael J. Bowers
Georgia Bar Number 071650
mbowers@balch.com
Christopher S. Anulewicz
Georgia Bar Number 020914
canulewicz@balch.com
Matthew B. Ames
Georgia Bar Number 015898
mames@balch.com
**BALCH & BINGHAM LLP**
30 Ivan Allen Jr. Boulevard, Ste. 700
Atlanta, Georgia 30308
Telephone: (404) 261-6020
Fax: (404) 261-3656
*Attorneys for Plaintiffs*

**CERTIFICATE OF COUNSEL REGARDING FONT SIZE**

Counsel certifies that the foregoing has been prepared using Times New Roman font size 14 in accordance with Local Rules 5.1(B)(3) and 7.1(D).

This 15th day of May, 2017.

                                        **/s/ Christopher S. Anulewicz**
                                        Christopher S. Anulewicz

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and service will be perfected upon the following this 15th day of May, 2017:

>Nathan L. Garroway
>Jeffrey Zachman
>Dentons US LLP
>303 Peachtree St., NE, Suite 5300
>Atlanta, GA 30308
>
>Thomas F. Richardson
>Frances L. Clay
>Chambless, Higdon, Richardson, Katz& Griggs, LLP
>P.O. Box 18086
>Macon, GA 32109
>
>Adam Appel
>Dermer Appel Ruder, LLC
>6075 The Corners Pkwy, Suite 210
>Peachtree Corners, GA 30092
>
>Joe Kingma
>John Rogers
>Carlock, Copeland & Stair, LLP
>191 Peachtree Street, Suite 3600
>Atlanta, GA 30303

>**/s/ Christopher S. Anulewicz**
>Christopher S. Anulewicz