**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

CAPTAIN JACK'S CRAB SHACK, INC. d/b/a CAPTAIN JACK'S CRAB SHACK, RONNIE BARTLETT, and LEE BARTLETT,

Plaintiffs,

v.

K. DAVID COOKE, JR., District Attorney of the Macon Judicial Circuit, in his individual capacity, MICHAEL G. LAMBROS, Special Assistant District Attorney of the Macon Judicial Circuit, in his individual capacity, MELANIE BICKFORD, Investigator, City of Byron Police Department, Byron, Georgia, in her individual capacity, and CHRISTINE WELCH, Police Officer, City of Centerville Police Department, Centerville, Georgia, in her individual capacity,

Defendants.

Civil Action File
No.: 1:16-CV-02887-SCJ

**DEFENDANT K. DAVID COOKE, JR.'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS THE SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

Plaintiffs' claims are barred under well-established federal law. The original Complaint was an improper attempt to intimidate and influence criminal proceedings against Plaintiffs. The Second Amended Complaint, however, expands this strategy, seeking to enjoin an ongoing state prosecution and alleging a retaliatory prosecution claim directly attacking Mr. Cooke's discretion to prosecute criminal charges in State court. *See* [DE 17-1] and [DE 60.]

Mr. Cooke is entitled to absolute immunity for all Plaintiffs' claims because those claims arise from Mr. Cooke's performance of his prosecutorial duties. Mr. Cooke's evaluation of the evidence against Plaintiffs, and his decision to initiate proceedings against them, are core prosecutorial functions.

Further, even if Mr. Cooke were not absolutely immune from suit—which he is—he is protected by qualified immunity. The course of Mr. Bartlett's criminal proceeding—including an initial conviction of Mr. Bartlett by a Georgia jury—establish that Georgia law had certainly not "clearly established" that Plaintiffs' conduct was lawful.

## I. STATEMENT OF FACTS

Plaintiffs Ronnie and Lee Bartlett owned and operated Captain Jack's Crab Shack ("Captain Jack's"), along with several other restaurants.[1] (Second Am. Compl. ¶ 5.)[2] Plaintiffs allege that Defendants, including Mr. Cooke, obtained a search warrant for Captain Jack's and arrest warrants for Mr. and Mrs. Bartlett. (*Id.* ¶¶ 18 & 20.) Pursuant to those warrants, Captain Jack's was searched, Plaintiffs' property was seized, and the Bartletts were arrested. (*Id.* ¶¶ 19, 20.) Also, in accordance with O.C.G.A. § 9-16-1, Defendants filed "a 19-page verified Complaint for Relief and Notice for Seizure Under the Georgia RICO Act" (the "Civil RICO Action"). (*Id.* ¶ 14.)

Plaintiffs allege that "[a]s to the warrants and the seizure of Plaintiffs' property, and in the Civil RICO Action, Defendants knowingly and falsely represented that Plaintiffs had violated the Georgia RICO Act" by operating illegal gambling machines at Captain Jack's, making improper cash payments to players, falsely reporting winnings to the Georgia Department of Revenue, and money

---

[1] The Court must accept as true all facts alleged in the complaint on a Rule 12(b)(6) motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, the facts set forth are derived from the Second Amended Complaint. Nevertheless, Mr. Cooke vigorously disputes the allegations in the Second Amended Complaint.

[2] The civil forfeiture action has been terminated.

laundering.  (*Id.* ¶ 21.)  Plaintiffs allege that Defendants had no evidence to support a RICO charge,[3] but initiated the civil and criminal actions anyway.  (*See id.* ¶ 76.) Further, Plaintiffs contend that Defendants knowingly presented false evidence in the prosecution of the civil and criminal actions against them.  (*Id.* ¶¶ 11, 60, 66, 76, & 84.)  Finally, Plaintiffs contend that Defendants Cooke and Lambros indicted them in retaliation for filing this lawsuit.  (*Id.* ¶¶ 68-73.)

On August 9, 2016, Plaintiffs filed this suit, asserting claims under state law and 42 U.S.C. § 1983,[4] 1985, 1986, and 1988.  *See* [DE 1] ¶¶ 51-88.  On October 12, 2016, Plaintiffs were indicted, along with seven other individuals (the "Related Defendants") on the illegal gambling charges for which they were arrested in May 2015.  (Second Am. Compl. ¶¶ 52-53); [DE 49-2.]

On October 27, 2016, Plaintiffs filed an Amended Complaint.  *See* [DE 50.] The Amended Complaint restated the claims in the original Complaint, but also added a claim for retaliatory prosecution and a claim for injunctive relief.  (*See* Am. Compl. ¶¶ 61-66 and pp. 27-29.)   In conjunction with the Amended

---

[3] Plaintiffs do not deny they made improper cash payments, but assert that those acts do not support a Georgia RICO claim.  (*See* Second Am. Compl. ¶ 26.)

[4] Count IV alleges a claim for "Failure to Intercede."  (*See* Second Am. Compl. ¶¶ 74-77.)   Georgia has not recognized such a claim against prosecutors.  To the extent such a claim exists against prosecutors, it is a claim under 42 U.S.C. § 1983. *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986), *abrogated on other grounds*.

Complaint, Plaintiffs filed a Motion for TRO and Preliminary Injunction (the "Motion for TRO") asking this Court to stay the ongoing criminal proceedings against Plaintiffs.  *See* [DE 49.]

On April 11, 2017, the Court held a hearing on Plaintiffs' Motion for TRO. This Court denied that Motion and stayed this case pending the resolution of the criminal charges pending against Plaintiffs.  *See* [DE 82.]  The Court reasoned that Plaintiffs had not proven that their prosecution was retaliatory or would not have been prosecuted notwithstanding this lawsuit.  [*Id.*] at 12.

On November 1, 2017, Plaintiffs filed a Second Amended Complaint [DE 97], adding claims for attorneys' fees under O.C.G.A. § 51-7-80 and § 13-6-11.

On February 12, 2018, Mr. Bartlett's criminal jury trial began.[5]  Mr. Bartlett was convicted of commercial gambling (a felony), keeping a gambling place (a misdemeanor of high and aggravated nature), and possession of a gambling device (a misdemeanor of high and aggravated nature).  [DE 124-1.]  On June 25, 2019, the Court of Appeals reversed Mr. Bartlett's convictions.  *Bartlett v. State*, 351 Ga. App. 476, 829 S.E.2d 187 (2019).   The court held that the evidence was insufficient to support the convictions because there was "insufficient [evidence] to

---

[5] Ms. Bartlett's criminal proceedings are stayed until the resolution of Mr. Bartlett's criminal appeal.  [DE 154.]

show that Bartlett acted with the requisite criminal intent to support the commercial gambling charges." The court held, however, that making cash payouts from an otherwise legal COAM might subject Mr. Bartlett to prosecution under O.C.G.A. §§ 16-12-35(e), (f), or (g). *Id.*

## II. ARGUMENT

### A. Mr. Cooke Is Absolutely Immune From Plaintiffs' Federal Claims.

"A prosecutor enjoys absolute immunity from allegations stemming from the prosecutor's function as advocate." *Davis v. Self*, 960 F. Supp. 2d 1276, 1306 (N.D. Ala. 2013). In *Imbler v. Pachtman*, 424 U.S. 409, 423–24 (1976), the United States Supreme Court set forth the rationale for this rule:

> The office of public prosecutor is one which must be administered with courage and independence. Yet how can this be if the prosecutor is made subject to suit by those whom he accuses and fails to convict? To allow this would open the way for unlimited harassment and embarrassment of the most conscientious officials by those who would profit thereby. There would be involved in every case the possible consequences of a failure to obtain a conviction. There would always be a question of possible civil action in case the prosecutor saw fit to move dismissal of the case. . . . The apprehension of such consequences would tend toward great uneasiness and toward weakening the fearless and impartial policy which should characterize the administration of this office. The work of the prosecutor would thus be impeded, and we would have moved away from the desired objective of stricter and fairer law enforcement.

*Id.* at 409. Thus, "the absolute immunity doctrine has evolved such that even wrongful or malicious acts by prosecutors are allowed to go unredressed in order to

prevent a flood of claims against the remainder of prosecutors performing their duties properly." *Hart v. Hodges*, 587 F.3d 1288, 1298 (11th Cir. 2009).

Mr. Cooke enjoys absolute immunity for all acts committed in his "prosecutorial function." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1279 (11th Cir. 2002). "This functional approach looks to the nature of the function performed, not the identity of the actor who performed it." *Rehberg v. Paulk*, 611 F.3d 828, 837 (11th Cir. 2010) (quotations omitted). Thus, "absolute immunity extends to a prosecutor's acts undertaken in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State." *Davis*, 960 F. Supp. 2d at 1306*; see also Imbler*, 424 U.S. at 410 (when prosecutor "act[s] within the scope of his duties in initiating and pursuing a criminal prosecution," he is absolutely immune from suit).

**1. Initiating Civil and Criminal Actions Is a Prosecutorial Function.**

According to Plaintiffs, "[t]his case is about Defendants falsely and deliberately representing evidence and legal claims in order to secure warrants and injunctions that resulted in the arrest of the Bartletts and the seizure of their assets and the assets of Captain Jack's." (Second Am. Compl. ¶ 11.) Specifically, Plaintiffs allege that Mr. Cooke obtained warrants by presenting evidence "based on fabrications, material misrepresentations, and material omissions." (*Id.* ¶ 56;

*see also id.* ¶¶ 63 & 76.) Plaintiffs contend that they were harmed because Mr. Cooke initiated civil and criminal proceedings against them and introduced fabricated evidence in support of those proceedings. (*See id.* ¶¶ 11, 57, 76, & 84.) Plaintiffs directly challenge Mr. Cooke's decision to indict them. (*Id.* ¶¶ 68-73.)

Mr. Cooke, however, "enjoy[s] absolute immunity for the initiation and pursuit of criminal prosecution." *Lloyd v. Card*, 283 F. App'x 696, 702 (11th Cir. 2008). That immunity applies even where the charges are "bogus" or supported by fabricated evidence. *Lloyd v. Foster*, 298 F. App'x 836, 839 (11th Cir. 2008); *see also Barr v. Gee*, 437 F. App'x 865, 876 (11th Cir. 2011) (prosecutors immune from suit for initiating prosecution and introducing evidence in court, "even if they knowingly proffered false testimony or evidence."). It applies even where the prosecutor acts in bad faith. *Hart*, 587 F.3d at 1298. It thus certainly applies when a conviction is overturned as a matter of first impression on appeal. For purposes of absolute immunity, it makes no difference that Mr. Bartlett's conviction was overturned. Nor does it make any difference whether Mr. Cooke had any good faith basis for asserting the claim in the first place.[6] *Id.* For these reasons, Mr.

[6] As discussed below with respect to qualified immunity, Mr. Cooke had more than a good faith basis to pursue criminal charges against Plaintiffs. That issue is simply irrelevant here. The Court of Appeals has already acknowledged that Mr. *{footnote continued}*

Cooke is immune from suit for his conduct in initiating, prosecuting, and refusing to dismiss civil and criminal charges against Plaintiffs.

### 2. Seeking Warrants and Presenting Evidence in Court Are Core Prosecutorial Functions.

Plaintiffs also allege that Mr. Cooke improperly obtained search and arrest warrants by presenting fabricated evidence. (*See* Second Am. Compl. ¶¶ 11, 18, 21, 63, & 65.) Absolute immunity, however, extends to the preparation of "an application for a search warrant and the presentation of evidence at that hearing." *Card*, 283 F. App'x at 702 (finding immunity applied to prosecutor drafting false affidavits in support of search warrant); *Barr*, 437 F. App'x at 876 ("The prosecutorial function includes initiation of criminal prosecution, appearance in judicial proceedings, prosecutorial conduct before grand juries, statements made during trial, examination of witnesses, and presentation of evidence in support of a search warrant at a probable-cause hearing."); *Fullman v. Graddick*, 739 F.2d 553, 558–59 (11th Cir. 1984) (granting absolute immunity where the prosecutor signed an arrest warrant without probable cause and on the basis of evidence which the prosecutor allegedly fabricated); *Burns v. Reed*, 500 U.S. 478, 491–92 (1991).

---

*{continued from previous page}*
Bartlett could have been charged with violations of O.C.G.A. §§ 16-12-22(a)(1), 16-12-24(a), or 16-12-23(a).

In *Rehberg v. Paulk*, the plaintiff alleged that the defendant prosecutor and investigator, "acting as investigators, got together . . . with malice and without probable cause, and made up a story about [the plaintiff], and then [the investigator] (at [the prosecutor's] direction) told that fake story under oath to the grand jury, leading to [the plaintiff's] indictment and arrest." 611 F.3d at 840. Nevertheless, the prosecutor was entitled to absolute immunity, despite allegations that he *intentionally* developed and proffered knowingly perjured testimony.

As in *Rehberg*, Mr. Cooke is entitled to absolute immunity for any allegations that he proffered fabricated testimony in an effort to obtain a search warrant for Captain Jack's and arrest warrants for the Bartletts. *Id.* at 841-842; *Barr*, 437 F. App'x at 876; *see also Foster*, 298 F. App'x at 839 (absolute immunity applied where prosecutor allegedly "conspired to prosecute [the plaintiff] on a bogus charge and arranged to have a fraudulent search warrant issued to raid his house, where evidence was planted."); *Holden v. Sticher*, 427 F. App'x 749, 753 (11th Cir. 2011) (absolute immunity extends to false statements made before court on warrant applications).

**3. Pursuing a Civil Forfeiture Proceeding Is a Core Prosecutorial Function.**

Plaintiffs also allege that Mr. Cooke presented false evidence in support of the State's forfeiture action. (*See* Second Am. Compl. ¶ 23.) Absolute immunity, however, extends to Mr. Cooke's conduct related to these forfeiture proceedings. As District Attorney for the Macon Judicial Circuit, Mr. Cooke is specifically authorized to pursue civil forfeiture actions under O.C.G.A. § 9-16-3. *See id.* ("A civil forfeiture proceeding shall be filed by a state attorney in the name of the State of Georgia in any superior court of this state . . . ."). Thus, Mr. Cooke's conduct in prosecuting a civil forfeiture action is part of his prosecutorial function, and he is immune from suit. *See Jarallah v. Simmons*, 191 F. App'x 918 (11th Cir. 2006) (prosecutorial immunity applies to claims arising from civil action initiated by prosecutor); *Davis*, 960 F. Supp. 2d at 1306 (absolute immunity barred claim arising from prosecutor's conduct in civil child support enforcement action).

**4. <u>Plaintiffs' Claims Do Not Arise from Mr. Cooke's Conduct as an Investigator.</u>**

"The prosecutorial function . . . does not include functioning as either an investigator or as a complaining witness."[7] *Rivera v. Leal*, 359 F.3d 1350, 1353

[7] Plaintiffs do not allege, even in conclusory fashion, that Mr. Cooke acted as a complaining witness by swearing to the truth of any allegations against Plaintiffs. *See Kalina v. Fletcher*, 522 U.S. 118, 129 (1997) (absolute immunity applied to preparing and filing arrest motion and information, but did not apply where *{footnote continued}*

(11th Cir. 2004) (citations omitted).  "A prosecutor functions as an investigator when he search[es] for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested."  *Id*.  However, "[t]here is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand."  *Buckley v. Fitzsimmons*, 509 U.S. 259, 273–74 (1993).  For instance, a prosecutor is entitled to immunity when evaluating evidence to determine whether to pursue charges against a criminal defendant.  *Ireland v. Tunis*, 113 F.3d 1435 (6th Cir. 1997) (absolute immunity applies to conduct authorizing and preparing complaint, for seeking warrant for mayor's arrest, and for presenting charging documents to judge who issued warrant).  Similarly, prosecutors are immune from suit when preparing for and conducting probable cause hearings.  *Rivera*, 359 F.3d at 1354.

Plaintiffs here allege in conclusory fashion that Defendants were "acting . . . while in their investigative capacities."  (Second Am. Compl. ¶ 56.)  The Court

---

*{continued from previous page}*
prosecutor acted as a complaining witness by signing certification under penalty of perjury).   "The sworn/unsworn distinction is more than critical; it is determinative."  *Rivera*, 359 F.3d at 1355.

should disregard this bare legal conclusion, especially given that there are "heightened pleading requirements for civil rights cases, especially those involving the defense of qualified immunity." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) ("In [qualified immunity] cases, the complaint must allege the relevant facts with some specificity.  [M]ore than mere conclusory notice pleading is required. . . .  [A] complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory."  (quotations omitted) (citations omitted)); *see also Iqbal*, 556 U.S. at 678 (holding that a court on motion to dismiss is "not bound to accept as true a legal conclusion couched as a factual allegation").

The Second Amended Complaint alleges no facts showing that Mr. Cooke engaged in any investigative activity.  It does not allege that Mr. Cooke ever "left his normal work environment.  He did not go to the scene of a crime, nor did he participate in a search." *Rivera*, 359 F.3d at 1353 (rejecting claim that prosecutor acted as investigator).  It does not allege that Mr. Cooke "search[ed] for the clues and corroboration that might give him probable cause" to arrest Plaintiffs.  *Id.*  It does not allege that Mr. Cooke acted like a detective.  *See Buckley*, 509 U.S. at 273 (absolute immunity does not apply when prosecutor takes "detective's role in searching for the clues and corroboration").  Plaintiffs' claims instead arise from

their arrest, indictment, and the search and seizure of their property pursuant to a warrant, which are prosecutorial functions.

**5. Plaintiffs' Allegations Regarding Mr. Cooke's Improper Motive Do Not Defeat Absolute Immunity.**

Plaintiffs allege that Mr. Cooke obtained warrants and injunctions by knowingly presenting fabricated evidence. (*See* Second Am. Compl. ¶¶ 11, 57, 76, & 84.) More directly, however, Plaintiffs allege that Mr. Cooke indicted them in retaliation for filing this lawsuit. (*Id.* ¶¶ 68-73.) These allegations are demonstrably false, as Mr. Bartlett was convicted of illegal gambling under a reasonable doubt standard.[8] But, they are also irrelevant. Absolute "immunity attaches to [the prosecutor's] function, not to the manner in which [s]he performed it. Accordingly, a prosecutor's motivation, and whether preferable alternatives to the actions taken were available, are irrelevant." *Neville v. Classic Gardens*, 141 F. Supp. 2d 1377, 1381 (S.D. Ga. 2001) (quotation omitted); *Hartman v. Moore*, 547 U.S. 250, 261–62 (2006) (holding that a Section 1983 "action for retaliatory

[8] To the extent Plaintiffs assert that the charges against Mr. Bartlett were so baseless that Mr. Cooke is subject to civil liability for even asserting them, their position would also establish that the Georgia judge who presided of Mr. Bartlett's conviction also acted in bad faith and is therefore subject to civil liability. That is, of course, not the law because, among other reason, it would lead to absurd results.

prosecution will not be brought against the prosecutor, who is absolutely immune from liability for the decision to prosecute").

*Rehberg* addressed identical allegations.  In *Rehberg*, the plaintiff alleged that the district attorney prosecuted him in retaliation for exercising his First Amendment rights.  The Eleventh Circuit dismissed the plaintiff's claim, reasoning that "[the prosecutor's] alleged decision to prosecute [the plaintiff], even if made without probable cause and *even if caused solely by . . . his unconstitutional retaliatory animus*, is protected by absolute immunity."  *Rehberg*, 611 F.3d at 849 (emphasis added).  Similarly, in *Foster*, the plaintiff "argue[d] that [the defendant prosecutors] conspired to prosecute him on a bogus charge and arranged to have a fraudulent search warrant issued to raid his house, where evidence was planted." 298 F. App'x at 839.  The Court held that absolute immunity barred the plaintiff's suit.  *See also Barr*, 437 F. App'x at 876 (finding absolute immunity barred suit, "even if [prosecutors] knowingly proffered false testimony or evidence."); *Rowe*, 279 F.3d at 1279–80 (holding prosecutor who proffered perjured testimony and fabricated exhibits at trial is entitled to absolute immunity).

Here, as in *Rehberg* and *Foster*, Plaintiffs allege that Mr. Cooke relied upon testimony he knew was false and prosecuted them in retaliation for filing this lawsuit.  (*See* Second Am. Compl. ¶¶ 11, 63, 65, & 68-73.)  Mr. Cooke is immune

from such allegations. *See also Neville*, 141 F. Supp. 2d at 1384 (absolute immunity applies "without regard to motive of prosecutor, bad faith, or presence of malice."). Plaintiffs' federal claims against Mr. Cooke should be dismissed.

**6. Plaintiffs Conspiracy Claim under 42 U.S.C. § 1985 Does Not Defeat Absolute Immunity.**

Plaintiffs' conspiracy allegations under 42 U.S.C. § 1985 are also barred by absolute immunity. "A prosecutor cannot be liable for 'conspiracy' to violate a defendant's constitutional rights by prosecuting him if the prosecutor also is immune from liability for actually prosecuting the defendant." *Rehberg*, 611 F.3d at 854; *Leitgeb v. Kelley*, 510 F. Supp. 2d 1227, 1232 (N.D. Ga. 2007) (same).

**7. Plaintiffs' Failure to Intercede Claim Should Be Dismissed.**

Plaintiffs' "failure to intercede" claim also fails. First, failure to intercede claims against prosecutors have not been recognized in the Eleventh Circuit.[9] Second, to the extent this Circuit recognizes such a claim, Plaintiffs merely assert that Mr. Cooke failed to prevent the Section 1983 violations discussed above. Because Plaintiffs' Section 1983 claims are barred by absolute immunity,

[9] Plaintiffs cite *Bracey v. Jolley*, No. 1:10-CV-4064-TCB, 2013 WL 12097643, at *1 (N.D. Ga. Mar. 27, 2013), which involved a police officer. The Eleventh Circuit applies failure to intercede claims to police officers, not prosecutors. *See Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986), *abrogated on other grounds*.

"[Plaintiffs'] claims for failure to intercede to prevent those acts should also be dismissed." *Jackson v. Seewald*, No. 11 CIV. 5826, 2013 WL 149341, at *13 (S.D.N.Y. Jan. 14, 2013) (dismissing failure to intercede claim because absolute immunity barred underlying Section 1983 claims); *Henry-Lee v. City of N.Y.*, 746 F. Supp. 2d 546, 566 (S.D.N.Y. 2010) ("An underlying constitutional violation is an essential element of a failure to intercede claim under § 1983.").

Third, Plaintiffs' failure to intercede claim alleges only prosecutorial conduct. *See* Second Am. Compl. ¶ 76 (alleging Mr. Cooke "did nothing to prevent the submission of false statements in support of the warrant.")); *Card*, 283 F. App'x at 702 (preparing false search warrant affidavits part of prosecutorial function); *see supra* II.A.2. For these reasons, Plaintiffs' Section 1982 claim fails.

**B. Plaintiffs' State Law Claims Should Be Dismissed.**

**1. Mr. Cooke Is Immune from Suit under the Georgia Tort Claims Act, O.C.G.A. § 50-21-25(a).**

Plaintiffs also assert claims for intentional infliction of emotional distress, conversion, and punitive damages. (*See* Second Am. Compl. ¶¶ 83-98.) Mr. Cooke is immune from these claims. O.C.G.A. § 50–21–25(a) provides that the Georgia Tort Claims Act "constitutes the exclusive remedy for any tort committed by a state officer or employee. A state officer or employee who commits a tort

while acting within the scope of his or her official duties or employment is not subject to lawsuit or liability therefor." "[B]oth the provisions of the [Georgia Tort Claims Act] and the case law interpreting it demonstrate that the Act provides immunity from liability for torts committed during a state employee's performance of official duties without regard to intent or malice." *Ford v. Caffrey*, 293 Ga. App. 269, 273, 666 S.E.2d 623, 626 (2008).

Here, Plaintiffs allege that Mr. Cooke was acting in his official capacity "as District Attorney for the Macon Judicial Circuit" at all times relevant to this suit.[10] (Second Am. Compl. ¶ 1.) And, as discussed above, Plaintiffs' claims arise from Mr. Cooke's conduct in his prosecutorial function. Although Plaintiffs named Mr. Cooke in his individual capacity, "[m]erely styling a suit against a public officer as one brought against him personally does not deprive him of any immunity to which he might otherwise be entitled for his official acts (under the Georgia Tort Claims Act)." *Brooks v. Barry*, 223 Ga. App. 648, 649, 478 S.E.2d 616, 617 (1996). Further, the Georgia Tort Claims Act provides immunity regardless of Mr. Cooke's alleged bad faith or malice. *Ridley v. Johns*, 274 Ga. 241, 242, 552 S.E.2d 853

[10] "'State officer or employee' means an officer or employee of the state, elected or appointed officials, law enforcement officers, and persons acting on behalf or in service of the state in any official capacity." O.C.G.A. § 50-21-22(7). Mr. Cooke, the District Attorney for the Macon Judicial District, is a state officer or employee.

(2001) ("Since there is no exemption in the statute for acts motivated by malice or an intent to injure, the presence of such motivation has no effect on the immunity granted by the statute."); *see also Ford v. Caffrey*, 293 Ga. App. 269, 273, 666 S.E.2d 623, 626 (2008) ("[B]oth the provisions of the [Georgia Tort Claims Act] and the case law interpreting it demonstrate that the Act provides immunity from liability for torts committed during a state employee's performance of official duties without regard to intent or malice."). Thus, Plaintiffs' state law claims against Mr. Cooke should be dismissed.

**2. Plaintiffs' Newly Added Claims for Attorneys' Fees Are Barred By the Georgia Tort Claims Act.**

The Second Amended Complaint brings state law claims for attorneys' fees and expenses of litigation under O.C.G.A. § 51-7-80 and § 13-6-11. *See* [DE 88-2] at 4 ("The only substantive claim the Second Amended Complaint seeks to add is for abusive litigation based on Cooke and Lambros's [allegedly] groundless Civil RICO Action."). These claims, like the state law claims discussed above, relate to Mr. Cooke's conduct in his official capacity. *See* O.C.G.A. § 9-16-3 ("A civil forfeiture proceeding shall be filed by a state attorney in the name of the State of Georgia in any superior court of this state . . . ."). They are thus barred by the Georgia Tort Claims Act, regardless of Mr. Cooke's alleged malice or bad faith.

*See Ridley*, 274 Ga. at 242 ("Since there is no exemption in the statute for acts motivated by malice or an intent to injure, the presence of such motivation has no effect on the immunity granted by the statute.").[11]

Independently, Plaintiffs' abusive litigation claim under O.C.G.A. § 51-7-80 fails because Mr. Cooke was substantially successful in the Civil RICO Action. O.C.G.A. § 51-7-82(c) (substantial success in underlying suit is complete defense to claim for abusive litigation). Here, the Second Amended Complaint alleges that Defendants successfully obtained a temporary receivership over Plaintiffs' assets and froze Plaintiffs' accounts. *See* [DE 88-1] at 8 (discussing Defendants' success

[11] Plaintiffs previously relied on *Fulton County v. Lord*, 323 Ga. App. 384 (2013) and *Liberty County School District v. Halliburton*, 328 Ga. App. 422, 428 (2014) to support their claims under O.C.G.A. § 51-7-80 and § 13-6-11. *See* [DE 88-2] at 7-8. Neither case applies. In *Lord*, the plaintiff asserted claims again Fulton County under O.C.G.A. § 9-15-14, a related abusive litigation statute. Unlike Mr. Cooke, however, Fulton County is not immune from suit under the Georgia Tort Claims Act. *See* O.C.G.A. § 50–21–25(a) (immunizing only "state actors and employees" from suit); O.C.G.A. § 50–21(5) & (7) (excluding "counties, municipalities, [and] other units of local government" from definition of state actors protected under O.C.G.A. § 50–21-25(a)). Similarly, in *Halliburton*, the plaintiff asserted claims against a school district and its officers. Like the defendant in *Lord*, but unlike Mr. Cooke, school districts and their employees are not immune from suit under the Georgia Tort Claims Act. *See* O.C.G.A. § 50–21–22(5) ("State" for purposes immunity provided by Georgia Tort Claims Act, "does not include counties, municipalities, school districts," and "other units of local government"); O.C.G.A. § 50–21–25(a) (only "state officer[s] or employee[s]" are subject to immunity). Thus, neither *Lord* nor *Halliburton* applies here.

in obtaining relief in Civil RICO Action); *LaSonde v. Chase Mortg. Co.*, 259 Ga. App. 772, 774, 577 S.E.2d 822, 824 (2003) (dismissing claim under O.C.G.A. 51-7-80 et seq. where plaintiff in prior suit successfully obtained writ of possession). Thus, although the Civil RICO Action was voluntarily dismissed, Defendants were substantially successful. *See* [DE 88-1] at 8. Plaintiffs' independent claim for abusive litigation under § 51-7-80 fails.

Further, Plaintiffs' claim under O.C.G.A. § 13-6-11 fails because Plaintiffs cannot recover costs and fees related to a separate action under O.C.G.A. § 13-6-11. *See Monge v. Madison Cty. Record, Inc.*, 802 F. Supp. 2d 1327, 1339 (N.D. Ga. 2011). Second, even if O.C.G.A. § 13-6-11 created an independent cause of action, Mr. Cooke is entitled to immunity under the Georgia Tort Claims Act. Third, even if the statute created an independent cause of action, Plaintiffs' claim fails because Plaintiffs did not recover damages in the Civil RICO Action. *See 4WD Parts Ctr., Inc. v. Mackendrick*, 260 Ga. App. 340, 345, 579 S.E.2d 772, 777–78 (2003) ("Attorney fees are not recoverable under OCGA § 13-6-11 where there is no award of damages or other relief on any underlying claim.").

## C. Plaintiffs' Claim for an Injunction Should Be Dismissed.

Plaintiffs seek an injunction "enjoining the pending state criminal proceedings against them and any future criminal or civil proceedings arising out

of or related to the factual allegations forming the basis for the criminal proceedings initiated against them on or about May 5, 2015, and October 12, 2016." (Second Am. Compl. ¶ 105.) Plaintiffs' claim for injunctive relief is barred by the *Younger* doctrine and, more importantly, is now moot. *See Younger v. Harris*, 401 U.S. 37 (1971) (federal court should not interfere with state court criminal proceedings based on doctrines of comity and federalism).

**D. Mr. Bartlett's Claims are Alternatively Barred by Qualified Immunity.**

"Qualified immunity shields government officials who perform discretionary governmental functions from civil liability so long as their conduct does not violate any clearly established statutory or constitutional rights of which a reasonable person would have known." *Rehberg v. Paulk*, 611 F.3d 828, 837 (11th Cir. 2010). The Eleventh Circuit employs a burden-shifting approach to the qualified-immunity defense. First, the defendant must show that he was acting within the scope of his discretionary authority. *Moore v. Pederson*, 806 F.3d 1036, 1042 (11th Cir. 2015). If the defendant satisfies this requirement, the burden shifts to the plaintiff to show that the defendant violated a clearly established constitutional right. At the motion to dismiss stage, this means a plaintiff must have alleged facts sufficient to support a finding that the defendant violated clearly established law. *Chandler v. Sec'y of the Fla. DOT*, 695 F.3d 1194, 1198-99 (11th Cir. 2012).

Importantly, "a government agent is entitled to immunity unless his act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing." *Rehberg*, 611 F.3d at 838. In the Eleventh Circuit, the court only considers "binding precedent—holdings of cases drawn from the United States Supreme Court, this Court, or the highest court of the state where the events took place." *See Gilmore v. Hodges*, 738 F.3d 266, 277 (11th Cir. 2013).

Here, Mr. Cooke was acting within his discretionary duties. "A prosecutor's most basic duty is to prosecute cases in his jurisdiction on behalf of the State." *Mikko v. City of Atlanta*, 857 F.3d 1136, 1144 (11th Cir. 2017). "Related to that duty, prosecutors may also communicate with other law enforcement agencies, officials, or employees about current or potential prosecutions, and about current or potential witnesses for the cases that may be prosecuted." *Id.*

Plaintiffs thus bear the burden to identify *binding* authority establishing that Mr. Cooke was "plainly incompetent" for prosecuting them. *Chandler*, 695 F.3d at 1198-99. Plaintiffs cannot do so. To the contrary, the trial judge in Mr. Bartlett's criminal case believed that this case was meritorious, denying Plaintiffs' attempts to dismiss these charges before trial. *Bartlett*, 351 Ga. App. at 476. Further, a jury convicted Mr. Bartlett of many of these charges. Although the Georgia Court of

Appeals disagreed with the trial court as a matter of first impression, it *did not* cite binding authority holding that the arrest or charges was improper.[12]   At best, Plaintiffs can only allege that the law was not settled in Georgia.  *Id.* at 1147 ("At best, [plaintiff] can demonstrate only a discrepancy in Eleventh Circuit precedent, which is insufficient to defeat the defense of qualified immunity.").  Indeed, in pre-trial briefings and at the motion for directed verdict, Mr. Bartlett argued that the rule of lenity supported his legal arguments on the definition of commercial gambling.  The rule of lenity only applies when there is a "statutory ambiguity," not when there is clearly statutes or case law.  *Rollf v. Carter*, 298 Ga. 557, 557, 784 S.E.2d 341, 342 (2016); *United States v. Trout*, 68 F.3d 1276, 1280 (11th Cir. 1995) ("[W]here there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant.").

To the extent Plaintiffs rely on the Georgia Court of Appeals' decision as clearly established law, this argument fails.  *Cyber Zone E-Cafe, Inc. v. King*, 782 F. Supp. 2d 1331, 1339 (M.D. Fla. 2011), is on point.  There, plaintiffs sued the State Attorney, Sheriff, and Chief of Police, alleging that the defendants unlawfully seized Cyber Zone's assets and wrongfully prosecuted them for

---

[12] In any event, a Georgia Court of Appeals decision is not binding authority for purposes of qualified immunity.  *Gilmore*, 738 F.3d at 277.

violations of Florida's anti-gambling laws. *Id.* at 1333-34. At the close of the State's case at trial, the trial court granted a defense motion for judgment of acquittal on the ground of insufficient evidence. *Id.* A few month later, Plaintiffs were arrested and charged with identical crimes after recommencing their business. *Id.* Plaintiffs argued that both arrests violated clearly established law. *Id.*

After discussing absolute immunity, the court held that the prosecutor was "entitled to qualified immunity because the unconstitutionality of his actions was not clearly established at the time of the June 2009 and April 2010 arrests and seizures." *Id.* at 1338. The court continued that "[t]here are no decisions by the United States Supreme Court, the Eleventh Circuit Court of Appeals, the federal district courts within this Circuit, the Florida Supreme Court, or any state district court of appeal addressing the intersection of Florida's anti-gambling laws and businesses operating in a manner similar to Cyber–Zone." *Id.*

The plaintiff argued that the judgment of acquittal conclusively established a violation of clearly established rights. *Id.* The court disagreed, holding that "[a] judgment of acquittal in a criminal case based on insufficient evidence by a state trial court does not equate to a finding that the law in Florida was clearly established in April 2010 that the Plaintiffs' conduct was legal (and therefore that it was sufficiently clear that a reasonable officer would understand that arresting the

Plaintiffs' and seizing their property in April 2010 violated the Plaintiff's constitutional rights)." *Id.* at 1339.

Here, Mr. Cooke is similarly protected by qualified immunity. Plaintiffs cannot cite any clearly established case law holding that Plaintiffs were operating legally at the time of their prosecution. Moreover, "[a] judgment of acquittal in a criminal case based on insufficient evidence [like the Court of Appeal's ruling here] does not equate to a finding that the law" was clearly established *before* Plaintiffs' prosecution. *Cyber Zone*, 782 F. Supp. 2d at 1339; *see also Bartlett*, 351 Ga. App. at 482 (holding "insufficient [evidence] to show that Bartlett acted with the requisite criminal intent to support the commercial gambling charges"); *Marx v. Gumbinner*, 905 F.2d 1503, 1507 (11th Cir. 1990) ("That a defendant is subsequently acquitted or charges are dropped against the defendant is of no consequence in determining the validity of the arrest itself."). Mr. Cooke is alternatively protected by qualified immunity.

## III. CONCLUSION

The Court should dismiss Plaintiffs' claims against Mr. Cooke.

This 15th day of May, 2020.

By: */s/ Jeffrey A. Zachman*
Nathan L. Garroway
Georgia Bar No. 142194
nathan.garroway@dentons.com
Jeffrey A. Zachman
Georgia Bar No. 254916
jeffrey.zachman@dentons.com

DENTONS US LLP
303 Peachtree Street, NE. Suite 5300
Atlanta, GA 30308
Telephone: (404) 527-4000
Facsimile: (404) 527-4198

*Attorneys for Defendant*
*K. David Cooke, Jr.*

**CERTIFICATE UNDER LOCAL RULE 7.1(D)**

Pursuant to Local Rule 7.1(D), I certify that the foregoing pleading is a computer-generated document, prepared in Times New Roman, 14-point font, in accordance with Local Rule 5.1(B).

This 15th day of May, 2020.

By: *\/s/ Jeffrey A. Zachman*
Jeffrey A. Zachman

**CERTIFICATE OF SERVICE**

I hereby certify that on May 15, 2020, I electronically filed the foregoing ***Defendant K. David Cooke, Jr.'s Memorandum of Law in Support of His Motion to Dismiss the Second Amended Complaint for Failure to State a Claim*** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

This 15th day of May, 2020.

By: */s/ Jeffrey A. Zachman*
Jeffrey A. Zachman

114561343